UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:26-cv-03458-DFM | Date: | August 27, 2026 |
| Title | Lincoln Abraham Martin v. Markwayne Mullin et al[1] | | |

| | |
|---|---|
| Present: The Honorable | Douglas F. McCormick, United States Magistrate Judge |
| Nancy Boehme | Not Present |
| Deputy Clerk | Court Reporter |
| Attorney(s) for Petitioner: | Attorney(s) for Respondent(s): |
| Not Present | Not Present |
| **Proceedings:** | **(IN CHAMBERS) Order Denying Ex Parte Application for Temporary Restraining Order (Dkt. 11)** |

Petitioner has filed a pro se Petition for Writ of Habeas Corpus. See Dkt. 1 ("Petition"). Respondents have filed a Return. See Dkt. 8. Petitioner has not filed a reply. As the Court ordered, Respondents filed a supplemental brief. See Dkt. 17. Although the Court gave Petitioner an opportunity to file a response, Petitioner has not done so.

Meanwhile, Petitioner filed an application for a Temporary Restraining Order ("TRO"). See Dkt. 11 ("Application"). Respondents filed an opposition. See Dkt. 12. Shortly thereafter and with the parties' consent, this action was reassigned to the undersigned Magistrate Judge for all purposes. See Dkts. 4, 10, 14-15.

A TRO is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). To obtain a TRO, a petitioner must establish: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the petitioner's favor; and (4) that an injunction is in the public interest. See id. at 20. "The first factor 'is a threshold inquiry and is the most important factor.'" Baird v. Bonta, 81 F.4th 1036, 1042 (9th Cir. 2023) (citation omitted). "When, like here, the nonmovant is the government, the last two Winter factors 'merge.'" Id. (citations omitted).

Central District of California General Order No. 26-05 sets an accelerated briefing schedule and process for petitions under § 2241 seeking the type of immigration-related relief sought here.

[1] Markwayne Mullin became the Secretary of the Department of Homeland Security on March 24, 2026. Under Federal Rule of Civil Procedure 25(d), he is automatically substituted for Kristi Noem in this action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

See Dkt. 4. Under that General Order, applications for TROs "should be reserved for cases where the petitioner alleges imminent, irreparable harm that cannot be addressed by the standard scheduling order or by expediting the briefing schedule." Id.

Given the status of the briefing in this case and the nature of the harm alleged, the Court **DENIES** Petitioner's TRO Application on the grounds that Petitioner has not demonstrated the kind of "imminent, irreparable harm" that cannot be addressed on the expedited briefing schedule entered in this case by the General Order. Petitioner asserts that his continued detention violates his constitutional rights, which constitutes irreparable injury. See Application at 7-8, 10. The Court recognizes that the Ninth Circuit has held that the deprivation of constitutional rights can constitute irreparable injury. See Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017). However, asserting a constitutional claim does not automatically entitle a petitioner to emergency relief. If the generalized harm of detention were sufficient to bypass the standard briefing schedule, nearly every immigration habeas petition filed in this District would warrant an emergency TRO.

Furthermore, a substantial portion of Petitioner's Application appears to challenge the conditions of Petitioner's confinement, a claim which is not alleged in the Petition. Compare Petition with TRO Application at 3-4 (alleging that Petitioner has been subjected to overcrowded detention facilities; deprived of phone calls to counsel and family for days; deprived of shower, medication, or a place to sleep; deprived of food, water, medication, and restroom access for twelve hours while in transit; missed court dates due to his detention; been called "gay" and "[h]andicap" by detention facility staff; been denied clean drinking water; faced violence on a daily basis; gone three or four days without properly working restrooms or running water; been denied a clean and safe place and gotten sick more than seven times during his detention; been served uncooked and rotten chicken; been denied sanitary products including toothpaste, shampoo, and bathroom tissue; experienced high blood pressure; and been subjected to "deplorable" conditions). Nor has Petitioner sought leave of Court to file an amended Petition.

Given Petitioner's pro se status and the seriousness of his allegations, the Court will briefly discuss the legal framework surrounding conditions of confinement claims.

A habeas corpus action is the proper mechanism for a person in custody to challenge the legality or duration of their confinement. See Preiser v. Rodriguez, 411 U.S. 475, 484 (1973) "[T]he traditional function of the writ is to secure release from illegal custody." Id. The Supreme Court has left "to another day the question of the propriety of using a writ of habeas corpus to obtain review of the conditions of confinement, as distinct from the fact or length of the confinement itself." Bell v. Wolfish, 441 U.S. 520, 526 n.6 (1979).

Respondents contend that "[i]t is well-established that habeas claims cannot be premised on complaints about conditions of confinement." Dkt. 12 at 3 (citing Pinson v. Carvajal, 69 F.4th 1059, 1073 (9th Cir. 2023)). Indeed, the Ninth Circuit has "long held that prisoners may not challenge mere conditions of confinement in habeas corpus." Nettles v. Grounds, 830 F.3d 922, 933 (9th Cir. 2016) (en banc). Many courts in the Ninth Circuit have held that an action under

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), is the proper method for federal prisoners to challenge the conditions of their confinement. See, e.g., Beiruti v. Sugrue, No. 09-0360, 2009 WL 902048, at *1 (E.D. Cal. Apr. 2, 2009); Katz v. McGrew, No. 09-0412, 2009 WL 3049635, at *1-2 (D. Haw. Sept. 23, 2009); see also Badea v. Cox, 931 F.2d 573, 574 (9th Cir. 1991) (stating that a civil rights action is the proper method of challenging conditions of prison confinement). Some courts in the Ninth Circuit have reached a similar conclusion as to conditions of confinement claims alleged in a civil immigration detainee's habeas petition. See Ortiz-Chavez v. Chestnut, No. 26-1182, 2026 WL 1146068, at *10 (E.D. Cal. Apr. 28, 2026) (finding claims regarding medical issues not cognizable in a federal habeas action).

Neither the Supreme Court nor the Ninth Circuit has resolved whether, in the civil immigration detention context, a claim asserting that punitive conditions of confinement have rendered detention unlawful may be brought in habeas. See Bell, 441 U.S. at 526 n.6; Nettles, 830 F.3d at 931; Tavurov v. Noem, No. 26-0138, 2026 WL 323054, at *9 (W.D. Wash. Feb. 6, 2026) ("The Court cannot determine on the existing record whether there is jurisdiction for the Court to grant habeas corpus relief . . . based on the due process allegations about the nature and length of confinement being punitive due to conditions of confinement . . . . If petitioner is not released, the Court will maintain jurisdiction and consider whether to expand the record and potentially conduct an evidentiary hearing regarding whether petitioner would be entitled to habeas relief based on allegations that his continued confinement in the context of [the allegedly unlawful conditions] is punitive.").

In Pinson, the Ninth Circuit addressed conditions of confinement claims in the context of convicted federal prisoners. The court recognized "that the Supreme Court has left open the key question of whether there are circumstances when a challenge to the conditions of confinement is properly brought in a petition for writ of habeas corpus." 69 F.4th at 1075 (citing Ziglar v. Abbasi, 582 U.S. 120, 144-45 (2017)). The court concluded that the "relevant question is whether, based on the allegations in the petition, release is legally required irrespective of the relief requested" and found that there, the petitioner "failed to allege facts to support his legal contention that his detention was unlawful because no set of conditions exist that would cure the constitutional violations." Id. at 1072, 1075. Accordingly, the court held the petitioner's claims fell outside the historic core of habeas, and the district court properly found it lacked jurisdiction to hear the petition. See id. at 1075.

Shortly thereafter, in Doe v. Garland, 109 F.4th 1188 (9th Cir. 2024), the Ninth Circuit cited Pinson in discussing "core" and "non-core" habeas claims in an immigration habeas case. However, the Ninth Circuit did not squarely address whether Pinson necessarily applied in the civil immigration detention context. See id. at 1194.

Following Pinson and Garland, some district courts have adjudicated punitive conditions of confinement claims raised in § 2241 habeas petitions brought by immigration detainees. See, e.g., Doe v. Bostock, No. 24-0326, 2024 WL 3291033, at *6 (W.D. Wash. Mar. 29, 2024) ("This Court has, within the context of immigration habeas proceedings, adjudicated Fifth Amendment

conditions of confinement claims related to the COVID-19 pandemic.") (collecting cases), report and recommendation adopted, 2024 WL 2861675 (June 6, 2024); Herrera v. Mayorkas, No. 24-1933, 2025 WL 2382093, at *9 (W.D. Wash. May 19, 2025) (noting that the law is unclear as to whether such claims may be properly considered in a § 2241 petition and assuming, without deciding, that the petitioner could do so).

In addition, courts have expressly considered conditions of confinement as a relevant factor in prolonged detention claims raised in § 2241 habeas petitions in the civil immigration detention context. See, e.g., Doe v. Becerra, 723 F. Supp. 3d 688, 692 (N.D. Cal. 2024) (considering "conditions of detention and how they compare to conditions under which pretrial criminal detainees or people convicted of crimes are held" to be a relevant factor in determining whether petitioner's civil immigration detention has become so prolonged that it violates substantive due process); Djelassi v. ICE Field Off. Dir., 434 F. Supp. 3d 917, 920, 931 (W.D. Wash. 2020) (applying the six-factor Banda v. McAleenan, 385 F. Supp. 3d 1099, 1106 (W.D. Wash. 2019) test—which includes consideration of "the conditions of the detention facility"—to a prolonged detention due process claim); Singh v. Noem, 823 F. Supp. 3d 1164, 1172-73 (S.D. Cal. 2026) (same).

Though the Court acknowledges the somewhat unsettled legal question, it appears that Petitioner's conditions of confinement allegations would be more appropriately presented in a non-habeas action. While a district court may convert a habeas petition into a Bivens action in some circumstances, see Nettles, 830 F.3d at 935-36, the Court declines to do so here. Civil rights actions are subject to different requirements (and higher filing fees) than federal habeas proceedings. Indeed, the congressionally mandated filing fee for a civil rights complaint is currently $350.00 in contrast to the $5.00 filing fee for habeas petitions. See 28 U.S.C. § 1914(a). Petitioner has neither paid the fee to file a civil rights action nor requested to proceed in forma pauperis ("IFP"). Moreover, as stated, the Petition does not actually allege a conditions of confinement claim, nor has Petitioner sought leave of court to file an amended petition.

If Petitioner elects to bring a Bivens or other action based on his conditions of confinement allegations, Petitioner should submit a complaint with either the filing fee or a properly supported IFP request. See 28 U.S.C. § 1915(a)(1)-(2). He should not use the case number from this action. If Petitioner files a new action, the Clerk will give the new action a different case number.

Accordingly, Petitioner's TRO Application is **DENIED**. The Court anticipates issuing an Order on the Petition promptly.