**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| LINCOLN ABRAHAM MARTIN,<br>Petitioner,<br>v.<br>MARKWAYNE MULLIN et al.,<br>Respondents.[1] | Case No. 5:26-cv-03458-DFM<br><br>ORDER RE: PETITION FOR WRIT OF HABEAS CORPUS |

## I. INTRODUCTION

In September 2025, Petitioner Lincoln Abraham Martin, a civil immigration detainee, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. See Martin v. Dep't of Homeland Sec., No. 5:25-cv-02459-HDV-DFM ("Martin I"), Dkt. 1 (C.D. Cal. Sept. 8, 2025) ("Prior Petition"). The Court denied the Prior Petition and dismissed the action without prejudice. See id., Dkt. 32 (C.D. Cal. June 11, 2026).

On or about June 16, 2026, Petitioner initiated this action, filing another Petition for Writ of Habeas Corpus. See Dkt. 1 ("Petition"). On July 1, 2026, Respondents filed a Return. See Dkt. 8 ("Answer"). Petitioner thereafter

[1] Markwayne Mullin became the Secretary of the Department of Homeland Security on March 24, 2026. Under Federal Rule of Civil Procedure 25(d), he is automatically substituted for Kristi Noem in this action.

moved for a temporary restraining order, seeking his release from custody. See Dkt. 11 ("TRO Application"). Respondents opposed Petitioner's TRO Application. See Dkt. 12. In response to an order from the Court, Respondents filed a supplemental brief. See Dkt. 17 ("Supp. Br."). Though the Court permitted Petitioner to file a response to Respondents' supplemental brief, see Dkt. 16, Petitioner has not done so. The Court denied Petitioner's TRO Application on August 27, 2026. See Dkt. 19. For the reasons discussed below, the Petition is **DENIED**.

## II. BACKGROUND

Petitioner claims that he came to the United States legally on March 7, 1993 with an H-2B visa. See Petition at 7; see also TRO Application at 2. Petitioner's allegations regarding his subsequent immigration history are complicated, but appear to include allegations of a two-year grant of conditional residence, a missed hearing due to a change of address resulting in removal proceedings, a reopening of Petitioner's case, an approved Form I-130 in 2021, and an approved visa in 2024. See TRO Application at 2; see also https://acis.eoir.justice.gov/en/ (search A-Number: "072394854," Nationality: "Jamaica") (last accessed September 22, 2026) (noting that a Motion to Reopen IJ Jurisdiction was completed on July 25, 2018). The Form I-213 Record of Deportable/Inadmissible Alien submitted by Respondents states that Petitioner "has an approved I-130" and "no other petitions or applications pending with USCIS" as of June 3, 2025. See Answer, Ex. 3 ("Form I-213") at 2. The Form I-213 identifies under "BASIS FOR REMOVAL" that Petitioner "appears amenable" to Section 237(a)(1)(D)(i) of the Immigration and Nationality Act ("INA"). See id.

Respondents state that Petitioner is a native and citizen of Jamaica who has been charged as removable from the United States and was previously released from immigration detention on a $5,000 bond, with conditions that

included "no further arrests," "no possession of a firearm," and "no harmful contact." See Answer at 2 (citing Dkt. 8-1, April 23, 2024 Order of the Immigration Judge ("IJ") conditionally releasing Petitioner under bond).

Respondents further allege that Petitioner was arrested in Miami-Dade County on April 24, 2024, and again by the Broward Sheriff's Office on May 1, 2024. See id. Respondents contend that Petitioner's bond was subsequently canceled. See id.; see also Supp. Br. at 2 ("Petitioner's arrest constituted a changed circumstance warranting the cancellation of his bond."). Petitioner claims that the incident resulting in his arrest involved a dispute with a neighbor, in which Petitioner claims to have been spat in the face, called a racial slur, and forced to defend himself against two others. See TRO Application at 3.

Petitioner alleges that he was sent a Notice to Appear for an interview on May 3, 2025. See id. Petitioner alleges that he was then told to return on June 3, 2025, on which date he was arrested "without an Administrative warrant." Id.; see also Petition at 4; Form I-213. Respondents state that Petitioner was encountered by ICE at a check-in on April 29, 2025, but could not be detained due to a lack of bed space. See Supp. Br. at 2. Petitioner was then arrested at a later check-in when bedspace was available. See id.

Petitioner faces removal proceedings. See Answer at 2. On July 13, 2026, an IJ ordered Petitioner removed to Jamaica. See Supp. Br., Ex. 3 (finding Petitioner removable under 8 U.S.C. § 1227(a)(1)(D)(i)). Petitioner has a pending appeal with the Board of Immigration Appeals ("BIA"). See id., Ex. 4; https://acis.eoir.justice.gov/en/ (search A-Number: "072394854," Nationality: "Jamaica") (last accessed September 22, 2026). Petitioner remains detained at the Adelanto ICE Processing Center. See https://locator.ice.gov/odls/#/search (search A-Number: "072394854,"

Country of Birth: "Jamaica") (last accessed August 26, 2026). Petitioner has been detained for over fifteen months.

While detained, Petitioner has received two custody redetermination hearings. See Answer at 2-3, Exs. 2, 4. Petitioner has pending bond denial appeals with the BIA. See Answer at 2-3; Supp. Br., Exs. 1-2.

In his Petition, Petitioner asserts four claims: (1) his detention is unlawful under the Fifth Amendment Due Process Clause and Zadvydas v. Davis, 533 U.S. 678 (2001), because there is no good reason to believe that he will be deported in the reasonably foreseeable future; (2) the Government violated Due Process and the INA's implementing regulations by re-detaining him without notice and an opportunity to be heard; (3) his detention has become unconstitutionally prolonged; and (4) his continued detention violates his substantive due process rights. See Petition at 6-7.

In their Answer, Respondents argue that Petitioner has not shown that the Government lacked authority to detain him, Petitioner has not exhausted his administrative remedies, and Zadvydas is inapplicable while Petitioner's removal proceedings are ongoing. See generally Answer. Respondents argue in their Supplemental Brief that Petitioner's criminal history subjects him to mandatory detention under 8 U.S.C. § 1226(c), as amended by the Laken Riley Act ("LRA"). See Supp. Br. at 2-3.

## III. DISCUSSION

A federal court may grant a writ of habeas corpus to a petitioner "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas jurisdiction extends to noncitizens challenging the constitutionality of their immigration detention. See Zadvydas, 533 U.S. at 687-88; Trinidad y Garcia v. Thomas, 683 F.3d 952, 956 (9th Cir. 2012) (en banc).

### A. **Petitioner's *Zadvydas* Claim Is Meritless**

Petitioner claims that he is entitled to release under Zadvydas because his removal is not reasonably foreseeable. See Petition at 6. When the Court dismissed Petitioner's Prior Petition, it explained that Zadvydas was not applicable to Petitioner because he did not have a final order of removal. See Martin I, Dkt. 26 (C.D. Cal. May 5, 2026) ("Prior R&R") at 7. Petitioner's situation is unchanged.

Zadvydas construed 8 U.S.C. § 1231(a)(6), which governs detention after a noncitizen has received an administratively final order of removal. See Zadvydas, 533 U.S. at 682, 699-701. Section 1226, by contrast, governs detention of a noncitizen "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a); see also Johnson v. Guzman Chavez, 594 U.S. 523, 544 (2021) ("Section 1226 applies before an alien proceeds through the removal proceedings and obtains a decision; § 1231 applies after."). The transition from § 1226 to § 1231 occurs only after the removal order becomes administratively final. See 8 C.F.R. § 1241.1; Prieto-Romero v. Clark, 534 F.3d 1053, 1059 (9th Cir. 2008).

The record indicates that Petitioner is not subject to a final order of removal. See Answer at 5; 8 C.F.R. § 1241.1. As noted above, Petitioner appealed his removal order to the BIA and his appeal is pending. Petitioner's detention is therefore governed by § 1226, and the Zadvydas six-month presumption does not apply to his pre-final-order detention. See Prieto-Romero, 534 F.3d at 1059.

### B. **Petitioner's Remaining Due Process Claims Fail**

Petitioner alleges that the Government violated due process and INA regulations by re-detaining him without notice and an opportunity to be heard. See Petition at 6. Petitioner also challenges his detention on the grounds that it

has become unconstitutionally prolonged and violates his substantive due process rights. See id. at 6-7.

Respondents argue that the Department of Homeland Security ("DHS") is permitted to arrest and detain an alien "pending a decision on whether the alien is to be removed from the United States." Answer at 3 (quoting 8 U.S.C. § 1226(a)). Respondents argue that the Government is broadly authorized to exercise its discretion to revoke release under this authority under 8 CFR §§ 241.4(l)(1)-(2). See id. (citing Moran v. U.S. Dep't of Homeland Sec., No. 20-696, 2020 WL 6083445, at *9 (C.D. Cal. Aug. 21, 2020)). Respondents later state that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c), as amended by the LRA. See Supp. Br. at 2-3. Specifically, Respondents argue that Petitioner's March 2, 2024 arrest for aggravated battery results in mandatory detention because of the LRA's provision that makes noncitizen who "is arrested for . . . any crime that results in death or serious bodily injury to another person" subject to mandatory detention. See id. (citing § 1226(c)(1)(E)(ii)).

To start with, the government's reliance on 8 C.F.R. § 241.4 appears to be misplaced. This regulation applies to noncitizens with a final order of removal—the regulation is entitled "Continued detention of inadmissible, criminal, and other aliens beyond the removal period." It does not apply to noncitizens like Petitioner who have a pending appeal of their removal order. See 8 C.F.R. §§ 241.1, 1241.1.

Nor is the Court persuaded that mandatory detention § 1226(c) applies.[2] The government points to Petitioner's 2024 arrest, but that arrest predated the

[2] Respondents initially invoked § 1226(a) in this action. See Answer at 2-3. Up until Respondents' Supplemental Brief, the Government had not argued the application of § 1226(c) in either Martin I or this action. See Prior R&R at 6, n.1; Answer at 2-3.

LRA and the LRA's provisions are not retroactive. See Hermosillo-Barajas v. Mattos, No. 26-00274, 2026 WL 1383263, at *3 (D. Nev. May 18, 2026) (finding that the LRA does not apply retroactively).

Because § 1226(a) applies, § 1226(b) provides that "[t]he Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." The BIA has placed a limitation on this authority: "where a previous bond determination has been made by an [IJ], no change should be made by [DHS] absent a change of circumstance." Matter of Sugay, 17 I&N Dec. 637, 640 (BIA 1981); see also Panosyan v. Mayorkas, 854 F. App'x 787, 788 (9th Cir. 2021). The Government's apparent practice has been to require a showing of changed circumstances before re-arrest. See Saravia v. Sessions, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017) (summarizing government counsel's testimony).

**1. Petitioner Had a Protected Liberty Interest**

The Due Process Clause of the Fifth Amendment provides that "[n]o person shall . . . be deprived of . . . liberty . . . without due process of law." U.S. Const. amend. V. That protection extends to all persons in the United States, including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Id. at 690.

In Morrissey v. Brewer, the Supreme Court recognized that the decision to release a person from custody creates "at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," generating a liberty interest that "is valuable and must be seen as within the protection of" due process. 408 U.S. 471, 482 (1972). District courts in this

circuit consistently recognize that this principle extends to individuals subject to removal proceedings. See Ortega v. Bonnar, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019); Garro Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (collecting cases for the proposition that "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody").

Here, Petitioner was released on bond from immigration detention on April 23, 2024. See Answer, Ex. 1. Respondents argue that Petitioner's subsequent arrest "constituted a changed circumstance warranting the cancellation of his bond." Supp. Br. at 2. Petitioner's Form I-213 only references a March 2, 2024 arrest, which pre-dates Petitioner's April 23, 2024 release on bond. See Answer, Exs. 1, 3. In response to the Court's order requiring supplemental briefing, Respondents filed documents related to Petitioner's criminal history, which appear to suggest that Petitioner was charged with "Fugitive" on April 24, 2024 and "Failure to Appear" on May 1, 2024. See Supp. Br., Ex. 5.

Even assuming Petitioner's arrests and/or charges constituted changed circumstances that could justify his re-detention, the existence of changed circumstances does not excuse the Government from providing constitutionally adequate process before re-detaining a noncitizen who has been living at liberty. Due process protects Petitioner's liberty interest in remaining out of detention. See C.A.R.V. v. Wofford, No. 25-01395, 2025 WL 3059549, at *9-10 (E.D. Cal. Nov. 3, 2025) (finding a constitutionally protected liberty interest based on "approximately four years on parole" preceding re-detention); Aguilar v. Semaia, No. 26-0023, 2026 WL 166906, at *4 (C.D. Cal. Jan. 16, 2026) (same, based on four years under Order of Supervision).

### 2. The *Mathews* Factors Do Not Support Additional Process

To determine what procedures are constitutionally sufficient to protect a liberty interest, courts apply the three-part test established in Mathews v. Eldridge, 424 U.S. 319, 335 (1976): (1) the private interest affected by the official action; (2) the risk of erroneous deprivation through the procedures used and the probable value of additional or substitute procedural safeguards; and (3) the Government's interest, including the fiscal and administrative burdens of additional procedural requirements. The Ninth Circuit has observed that Mathews is "a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022).

Courts have applied the Mathews factors and determined that petitioners in situations similar to Petitioner's should have been given a pre-detention hearing. See Fernández López v. Wofford, No. 25-1226, 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025); Garro Pinchi, 792 F. Supp. 3d at 1036. However, that does not end the Court's inquiry, because Petitioner has received post-detention process, including two bond hearings before an IJ. See Answer, Exs. 2, 4. Here, the Ninth Circuit's reasoning in Rodriguez Diaz is instructive.

In Rodriguez Diaz, the petitioner received a bond hearing two months into his § 1226(a) detention, was denied bond, and was subsequently detained for fourteen more months. See 53 F.4th at 1194-95. Analyzing the petitioner's claims under the Mathews framework, the Ninth Circuit found that the petitioner had shown a private interest in freedom from prolonged detention. See id. at 1207. However, the Ninth Circuit cautioned that it was "important not to overstate the strength of Rodriguez Diaz's showing," noting that the first Mathews prong requires the court to "also consider the process he received during this time[]" and "the further process that was available to him." Id. at 1207-08. The petitioner "was not without process . . . because a further

bonding hearing before an IJ was available to him throughout the period of his detention upon a showing of materially changed circumstances." Id. at 1207.

Applying this framework here, Petitioner has shown that he has a private interest in freedom from detention because of his conditional release on bond in 2024, but the Court must consider that interest alongside the process Petitioner has been afforded while in detention, including the October and December 2025 bond hearings. See id. at 1207-08; see also Aguilar, 2026 WL 166906, at *4 (acknowledging petitioner's liberty interest "alongside the process Petitioner has been afforded while in detention").

The risk of erroneous deprivation is low because Petitioner has been afforded adequate procedural safeguards. Petitioner has received more process than in other cases in which courts have granted relief under Mathews. See, e.g., Fernández López, 2025 WL 2959319, at *6 (granting relief where petitioner was detained without a pre- or post-detention bond hearing); Singh v. Andrews, 803 F. Supp. 3d 1035, 1047-50 (E.D. Cal. 2025) (same). Here, after four-plus months of detention, Petitioner received a bond hearing before an IJ. See Answer, Ex. 2 (IJ's October 20, 2025 order denying bond on jurisdiction grounds and on the alternative grounds that Petitioner failed to show that he is neither a danger to the community nor a flight risk.).

Petitioner received a second bond hearing in December 2025, at which the burden of proof was on the Government. See Answer at 3 (noting Petitioner received a prolonged detention Rodriguez hearing), Ex. 4. The IJ denied bond, later explaining that "[a]fter carefully considering all the evidence presented, the Court concluded that [Respondent] had met its burden to establish that [Petitioner's] release would pose a danger to the community and such a significant flight risk that no amount of bond would be appropriate." Martin I, Dkt. 19-2 at 6 (C.D. Cal. Mar. 3, 2026). Petitioner is pursuing administrative appeals of the IJ's bond denials. See 8 C.F.R. § 236.1(d)(3); see

also Answer at 2-3. In addition, if a material change in Petitioner's circumstances occurs, he may seek an additional bond hearing. See 8 C.F.R. § 1003.19(e).

The second Mathews factor also looks to the "probable value, if any, of additional or substitute procedural safeguards." Mathews, 424 U.S. at 335. At this juncture, the additional value of any additional procedural safeguards appears to be minimal. "Ordering Petitioner released and barring his re-detention absent a pre-detention bond hearing would not meaningfully further mitigate the risk of erroneous deprivation of Petitioner's liberty." Aguilar, 2026 WL 166906, at *5. Petitioner has received two bond hearings. A third bond hearing would be of little value as Petitioner has not shown that his circumstances have materially changed since December 2025. See Rodriguez Diaz, 53 F.4th at 1209-10; Aguilar, 2026 WL 166906, at *5. Again, if Petitioner's circumstances have materially changed, he may seek an additional bond hearing. See 8 C.F.R. § 1003.19(e).

The Court also acknowledges that the government has a strong interest in enforcing its immigration laws. See Rodriguez Diaz, 53 F.4th at 1208 ("[T]he government clearly has a strong interest in preventing aliens from remain[ing] in the United States in violation of our law." (internal quotation marks omitted)).

Accordingly, the Court concludes that under these circumstances, the process Petitioner has received post-detention is sufficient to protect Petitioner's liberty interest. Because Petitioner is unable to demonstrate that the Mathews factors weigh in his favor, the Court declines to grant habeas relief based on his Fifth Amendment due process claim insofar as it rests on the absence of a pre-deprivation hearing.

The Court likewise declines to grant habeas relief based on Petitioner's substantive due process claim. The Supreme Court has held that detention

pending removal proceedings serves the recognized purposes of ensuring appearance and protecting the community, and that detention during removal proceedings is a constitutionally permissible part of that process. See Zadvydas, 533 U.S. at 690-91; Demore v. Kim, 538 U.S. 510, 528, 531 (2003).

Nor has Petitioner made an adequate showing on his prolonged detention claim. The Ninth Circuit has held that "duration alone" cannot sustain a due process challenge by a detainee who has been afforded the process contemplated by the governing framework. See Rodriguez Diaz, 53 F.4th at 1212 (quoting Borbot v. Warden Hudson Cnty. Corr. Facility, 906 F.3d 274, 277 (3d Cir. 2018)); see Prieto-Romero, 534 F.3d at 1063 (three-year detention under § 1226(a) not constitutionally indefinite). The Ninth Circuit has not foreclosed as-applied challenges to unreasonably prolonged detention, see Rodriguez Diaz, 53 F.4th at 1213-14, but this does not appear to be such a case, especially where the remedy of a bond hearing has been available to Petitioner. If Petitioner believes that his circumstances now support release, he should renew his request for a custody redetermination before the IJ.

### C. Petitioner Has Not Exhausted Administrative Remedies Regarding the IJ's Bond Denial

To the extent Petitioner challenges the IJ's bond denials, Petitioner has not exhausted his administrative remedies. The Ninth Circuit "require[s], as a prudential matter, that habeas petitioners exhaust available judicial . . . remedies before seeking relief under § 2241." Laing v. Ashcroft, 370 F.3d 994, 997 (9th Cir. 2004) (internal quotation marks omitted). Where, as here, a petitioner has not exhausted his administrative remedies, "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." Leonardo v. Crawford, 646 F.3d 1157, 1160 (9th Cir. 2011).

Exhaustion may be waived only where "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." Laing, 370 F.3d at 1000. The petitioner must "demonstrate[] grounds for excusing the exhaustion requirement." Leonardo, 646 F.3d at 1161.

Petitioner was afforded custody redetermination hearings before an IJ on October 20 and December 3, 2025. See Answer at 2-3, Exs. 2, 4. The record indicates that Petitioner appealed the bond denials to the BIA and his appeals remain pending. Petitioner identifies no basis for excusing exhaustion, and the Court discerns none on this record. Granting habeas relief in these circumstances would "encourage the deliberate bypass of the administrative scheme." Noriega-Lopez v. Ashcroft, 335 F.3d 874, 881 (9th Cir. 2003). Dismissal without prejudice is therefore appropriate. See Leonardo, 646 F.3d at 1160.

Because dismissal is without prejudice, Petitioner remains free to file a new petition should circumstances materially change—for example, if his detention becomes substantially more prolonged, if he requests and is denied access to a bond hearing notwithstanding a showing of materially changed circumstances, or if a bond determination is infected by legal error. See Rodriguez Diaz, 53 F.4th at 1213-14 (leaving open as-applied challenges to unreasonably prolonged § 1226(a) detention).

///

///

///

///

///

///

## IV. ORDER

1. The Petition is **DENIED** and this action is **DISMISSED WITHOUT PREJUDICE**.

2. Judgment shall be entered accordingly, and this action shall be closed.

Date: September 24, 2026

DOUGLAS F. MCCORMICK
United States Magistrate Judge